# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 25, 2019         Decided March 26, 2019

No. 18-3076

UNITED STATES OF AMERICA,
APPELLANT

v.

JAIME OMAR VASQUEZ-BENITEZ,
ALSO KNOWN AS GUERO,
ALSO KNOWN AS ALEX ANTONIO VASQUEZ,
ALSO KNOWN AS JAIME HUREO,
ALSO KNOWN AS JERMAN VASQUEZ-MATO,
ALSO KNOWN AS JULIO ISRAEL VASQUEZ,
ALSO KNOWN AS HERMAN EDUARDO VASQUEZ,
APPELLEE

Consolidated with 18-3080

Appeals from the United States District Court
for the District of Columbia
(No. 1:18-cr-00275-1)

*Kathryne Gray*, Trial Attorney, United States Department of Justice, argued the cause for the appellant. *Jessie K. Liu*, United States Attorney, *Erez Reuveni*, Director, *Joshua S. Press*, Trial Attorney, *Nicholas P. Coleman* and *Elizabeth*

*Trosman*, Assistant United States Attorneys were with her on brief.

 *Julia Fong Sheketoff*, Assistant Federal Public Defender, argued the cause for the appellee. *A.J. Kramer*, Federal Public Defender was with her on brief. *Mary M. Petras*, Assistant Federal Public Defender, entered an appearance.

 *Yihong Mao* was on brief for the *amicus curiae* National Immigration Project of the National Lawyers Guild in support of the appellee.

 Before: HENDERSON and TATEL, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

 Opinion for the Court filed by Circuit Judge HENDERSON.

 KAREN LECRAFT HENDERSON, *Circuit Judge*: Jaime Omar Vasquez-Benitez is a citizen of El Salvador who has illegally entered the United States more than once and been removed from the country at least once. Upon his most recent entry, Immigration and Customs Enforcement ("ICE") civilly detained him for the purpose of removing him from the country. The United States Attorney for the District of Columbia ("U.S. Attorney") also criminally charged him with unlawful reentry. Both his criminal and civil proceedings are currently ongoing. The district court decided (1) that it is unnecessary to detain Vasquez-Benitez in order to ensure his presence at his criminal trial and (2) that its ruling releasing him pre-trial means ICE cannot civilly detain Vasquez-Benitez in order to remove him from the country. The United States appeals both decisions. We affirm the district court's decision declining to detain Vasquez-Benitez pending trial but reverse its decision prohibiting ICE from civilly detaining him pending removal.

## I. BACKGROUND

Vasquez-Benitez first entered the country illegally sometime before 2001. In 2001, a bench warrant was issued for his arrest after he failed to appear in California state court on a charge of driving without a license. In 2005, he was accused of breaking into a woman's residence in Washington, D.C., attempting to sexually assault her at knifepoint and threatening retaliation if she called the police. He stood trial in D.C. Superior Court, where he was acquitted of certain charges but convicted of obstruction of justice based on the threat. He was sentenced to a term of three years' imprisonment, which he served from 2005 until 2008. Upon his release in 2008, ICE initiated proceedings to remove him from the country and he was removed to El Salvador. He reentered the country sometime before 2016, when he was arrested by the Metropolitan Police Department ("MPD") for allegedly attacking two individuals with a knife and identifying himself as a member of the violent 18th Street gang. The assault charges against him were dismissed, apparently before ICE was alerted to his presence, and he was released into the community. On July 12, 2018, MPD officers stopped Vasquez-Benitez because his torso and arms were covered in tattoos associated with 18th Street and arrested him for suspected gang activity. This time the MPD contacted ICE.

### A. The Civil Proceedings

ICE identified Vasquez-Benitez as an illegal alien subject to a final order of removal and took him into immigration custody pursuant to 8 U.S.C. § 1231(a)(5). On July 20, he asserted a basis for withholding of removal. Proceedings to assess his claim are ongoing. The United States believes the Immigration and Nationality Act ("INA"), specifically 8

U.S.C. § 1231,[1] authorizes Vasquez-Benitez's civil detention until the removal proceedings are concluded, which authority he disputes.[2]

## B. The Criminal Proceedings

On August 16, 2018, an ICE officer, with probable cause to believe Vasquez-Benitez had illegally reentered the country in violation of 8 U.S.C. § 1326,[3] obtained an arrest warrant. On August 20, Vasquez-Benitez was arrested and appeared before

---

[1] *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."); 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."); 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . .").

[2] We do not reach Vasquez-Benitez's argument that ICE lacks authority under the INA to detain him, which he failed to adequately raise below.

[3] *See* 8 U.S.C. § 1326(a) ("Subject to subsection (b), any alien who—(1) has been . . . removed [from the United States] . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under title 18, or imprisoned not more than 2 years, or both."); 8 U.S.C. § 1326(b) ("Notwithstanding subsection (a), in the case of any alien described in such subsection— (1) whose removal was subsequent to a conviction for . . . a felony (other than an aggravated felony), such alien shall be fined under title 18, imprisoned not more than 10 years, or both[.]").

a magistrate judge. The magistrate judge continued Vasquez-Benitez's initial appearance and granted the U.S. Attorney's initial request to detain Vasquez-Benitez pending further proceedings.

On August 22, Vasquez-Benitez entered his initial appearance and on August 28 the magistrate judge conducted a detention hearing under the Bail Reform Act ("BRA"), 18 U.S.C. § 3142. The magistrate judge declined to detain Vasquez-Benitez pending trial because the U.S. Attorney "did not argue that the defendant should be held because he is a danger" and did not "show by a preponderance of the evidence that he's a serious risk of flight." The magistrate judge ordered that Vasquez-Benitez be released from the custody of the U.S. Marshal subject to restrictive conditions. The U.S. Attorney immediately moved in district court to revoke the magistrate judge's order and requested a stay of the order pending further proceedings. A district judge granted the stay motion and scheduled a hearing to consider the motion to revoke. On August 30, the district judge denied the U.S. Attorney's revocation motion, finding "no reason to change the decision" by the magistrate judge that Vasquez-Benitez need not be detained pending trial under the BRA. The district judge ordered that Vasquez-Benitez be released from the custody of the U.S. Marshal subject to the same restrictive conditions imposed by the magistrate judge. The U.S. Attorney moved to stay the order pending appeal but the district judge denied the motion. The U.S. Marshal subsequently released Vasquez-Benitez and ICE then took custody of him.

On September 7, Vasquez-Benitez filed a motion to compel his release from ICE custody or, in the alternative, to dismiss the criminal charge against him with prejudice. On September 13, the grand jury indicted Vasquez-Benitez on one count of reentry of an alien deported following a felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1), and the case was reassigned to a different district judge. The new

district judge scheduled an arraignment and motion hearing for September 18 and a magistrate judge issued a writ of *habeas corpus ad prosequendum*, ordering ICE to transfer custody of Vasquez-Benitez to the U.S. Marshal so that he could attend the hearing. At the hearing, Vasquez-Benitez pleaded not guilty and the district judge heard oral argument on his motion to compel his release from ICE custody or, in the alternative, to dismiss the criminal charge with prejudice.

On September 26, the district judge issued an order granting Vasquez-Benitez's motion to compel his release. The district judge held that ICE loses its authority to civilly detain an illegal alien pending removal under the INA if that alien is charged with a crime and the court finds there is no need to detain him pending trial under the BRA. The district judge also announced his intention to reconsider, in light of new evidence, the BRA detention decision reached by the magistrate judge and the previous district judge. On September 27, the district judge conducted another detention hearing and—after considering the new evidence—agreed with the two predecessor judges that "there is not a sufficient risk of flight to justify pretrial detention." The district judge subsequently entered an order directing the U.S. Marshal to release Vasquez-Benitez and not to return him to ICE custody.

In this consolidated appeal the U.S. Attorney challenges the district court decision releasing Vasquez-Benitez pre-trial under the BRA; separately, the Office of Immigration Litigation of the Civil Division of the Department of Justice challenges the district court order "prohibiting [ICE] from administratively detaining the defendant for immigration proceedings during the pendency of his criminal prosecution."

## II. BAIL REFORM ACT RELEASE

We first review the district court's decision not to detain Vasquez-Benitez under the BRA. 18 U.S.C. § 3142(e)(1) mandates that a judge detain a criminal defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." In common parlance, the relevant inquiry is whether the defendant is a "flight risk" or a "danger to the community." The second district judge agreed with the original district judge as well as the magistrate judge that, because Vasquez-Benitez is neither a flight risk nor a danger to the community, there is no need to detain him pending trial. The U.S. Attorney claims the second district judge *clearly erred* in finding that Vasquez-Benitez is not a flight risk. We disagree.[4]

The four factors a court must consider to determine whether an individual is a flight risk are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). A determination that an individual is a flight risk must be

---

[4] Because the second district judge agreed with his two predecessors that Vasquez-Benitez need not be detained, we do not reach Vasquez-Benitez's argument that the second district judge lacked the authority to reopen the detention hearing under 18 U.S.C. § 3142(f).

8

supported by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam).

We agree with both parties that we review for clear error the district court's determination that a defendant is not a flight risk. *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (per curiam) (applying clear error standard of review to district court's determination that defendant is danger to community). Regardless what we may have found in the first instance, we cannot conclude that the second district judge—and by extension two other judges—*clearly erred* in finding that Vasquez-Benitez is not a flight risk. Indeed, Vasquez-Benitez presents a plausible argument as to why he is not a flight risk; even assuming the second § 3142(g) factor weighs against him,[5] the other three factors can be understood to favor him. With respect to the first factor, "the nature and circumstances of the charged offense," illegal reentry is a nonviolent crime. *See* 8 U.S.C. § 1326(a). In this case, it appears to carry with it a relatively low penalty, as the U.S. Attorney offered Vasquez-Benitez a plea deal with a low end of the sentencing guidelines range of twelve months imprisonment. With respect to the third factor, "the history and characteristics of the person," Vasquez-Benitez makes a host of relevant arguments. *First*, he points out that he has a wife,

---

[5] The second factor is "the weight of the evidence against the person." 8 U.S.C. § 1326 prohibits any alien who has been removed from the country from entering, attempting to enter or being found in the United States. No one disputes that Vasquez-Benitez has been found in the United States after being removed. Nevertheless, Vasquez-Benitez argues that the "weight of the evidence" against him is not as strong as it appears because the original removal order entered against him was procedurally invalid. We need not decide the validity of that order because we can affirm the district court's determination that Vasquez-Benitez is not a flight risk even if this factor weighs against him.

two children and a job as a dishwasher in the D.C. area. *Second*, he emphasizes that, although he has been accused of multiple crimes, he has been convicted only of obstruction of justice nearly fifteen years ago. *Third*, he pledges that he has left the 18th Street gang. *Fourth*, he points out that he has demonstrated his willingness to appear at judicial proceedings by appearing in his 2016 case. *Fifth*—and critically—he argues that he must not flee if he wishes to preserve his opportunity to obtain withholding of removal in his immigration case. Indeed, in order to convince an immigration judge that he is credible, he must abide by the district court's orders. With respect to the fourth factor, the danger to the community if he is released, Vasquez-Benitez emphasizes that he has never been convicted of a violent crime and that he has left the 18th Street gang.

Although one may doubt the credibility of Vasquez-Benitez's narrative, we are not well-positioned, as appellate judges, to make credibility determinations. That is a task best left to the trial court. In this case, three different trial judges have determined that Vasquez-Benitez is not a flight risk. Especially considering "the large discretion normally accorded the trial court in this area," *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996) (per curiam), we cannot say that the district judge whose order is under review *clearly erred*.

## III. CIVIL DETENTION UNDER THE IMMIGRATION AND NATIONALITY ACT

Next, we review the district court's September 26 order barring ICE from civilly detaining Vasquez-Benitez pending removal once he was ordered released pursuant to the BRA. The district court held that, when the U.S. Attorney chooses to bring criminal charges against a defendant subject to removal under the INA, "a judicial order under the Bail Reform Act provides the sole avenue for detaining defendant while the

charges are pending." Opinion and Order, District Ct. Docket, ECF 26 at 1. First, it held that 18 U.S.C. § 3142(d), a "*specific* provision for detaining removable aliens charged with illegal reentry," supersedes "the INA's *general* authority to detain removable aliens" like Vasquez-Benitez. Opinion and Order at 4 (emphases added). Second, it held, "[r]easoning from first principles," that "the government's invocation of concurrent and independent detention authority under the INA runs counter to our Constitution's text, structure, and history." *Id.* at 5.

Reviewing these legal conclusions *de novo*, *see Eldred v. Reno*, 239 F.3d 372, 374–75 (D.C. Cir. 2001), we disagree. Vasquez-Benitez wisely makes no attempt to defend the district court's constitutional analysis on appeal. The district court based its analysis on the premise that the Constitution vests in the judiciary "supervisory authority over the administration of criminal justice in the federal courts." Opinion and Order at 6 (quoting *Offutt v. United States*, 348 U.S. 11, 13 (1954)). We need not address the validity of that premise because the Department of Homeland Security's detention of a criminal defendant alien for the purpose of removal does not infringe on the judiciary's role in criminal proceedings. Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities. The Supreme Court has affirmed that civil detention is a constitutionally permissible part of the Congress's broad power over immigration and the Executive's authority to execute that power. *See Demore v. Kim*, 538 U.S. 510, 523, 531 (2003). So long as ICE detains the alien for the permissible purpose of effectuating his removal and not to "skirt [the] Court's decision [in] setting the terms of [his] release under the BRA," Opinion and Order at 7, ICE's detention does not offend separation-of-powers principles

simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial. Thus, we see no constitutional conflict of the kind articulated by the district court.

Neither do we see a statutory conflict. 18 U.S.C. § 3142(d) applies only if a "judicial officer determines that . . . [the defendant] may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d)(2).[6] As already discussed,

---

[6] 18 U.S.C. § 3142(d) provides:

If the judicial officer determines[, upon the appearance before the judicial officer of a person charged with an offense,] that –

   (1)    such person –

            \*    \*    \*

     (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); *and*

  (2)   *such person may flee or pose a danger to any other person or the community*;

such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the . . . appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B) of this subsection, such person has the burden of proving to

the district court decided that Vasquez-Benitez is *not* a flight risk or a danger to the community and therefore § 3142(d)(2) does not apply. In short, the supposed conflict between the BRA and the INA simply does not exist in this case.

Nor do the BRA and the INA conflict more generally. Individuals are detained under the BRA under authority separate from that used to detain individuals under the INA. A criminal defendant is detained under the BRA to ensure his presence at his criminal trial and the safety of the community. *See* 18 U.S.C. § 3142(e)(1). An illegal alien is detained under the INA to facilitate his removal from the country. *See* 8 U.S.C. § 1231(a)(2). ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial.

A further word is warranted. The district court relied on the principle "'that a precisely drawn, detailed statute pre-empts more general remedies,' even where both 'literally appl[y].'" Opinion and Order at 3 (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976)). There is, however, another principle that should have guided its resolution of the antecedent question whether two statutes "literally apply"— that is, "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). The Congress has never indicated that the BRA is intended to displace the INA. *See* 18 U.S.C. § 3142. Had the

---

the court such person's United States citizenship or lawful admission for permanent residence.

18 U.S.C. § 3142(d) (emphasis added).

district court begun its analysis with *Morton* instead of *Brown*, perhaps it would not have found a conflict where there is none.

We acknowledge that some district courts over the past several years have held, like the district court here, that the BRA and the INA conflict in cases like this one. *See United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012); *see also, e.g., United States v. Rangel*, 318 F. Supp. 3d 1212, 1217–19 (E.D. Wash. 2018); *United States v. Boutin*, 269 F. Supp. 3d 24, 26–29 (E.D.N.Y. 2017). But the Sixth Circuit recently became the first appellate court to weigh in on the issue and it found "no conflict between the BRA and INA in the manner which the *Trujillo-Alvarez* cases . . . ruled." *See United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018). It reasoned that "[t]he INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation." *Id.* We agree with the Sixth Circuit. That said, our holding is limited—we conclude only that the district court erred in prohibiting the U.S. Marshal from returning Vasquez-Benitez to ICE based on the mistaken belief that "the BRA provides the exclusive means of detaining a defendant criminally charged with illegal reentry." Opinion and Order at 3.

For the foregoing reasons, we affirm the district court order releasing Vasquez-Benitez from pre-trial custody under the Bail Reform Act but vacate its order prohibiting the U.S. Marshal from delivering Vasquez-Benitez to the custody of Immigration and Customs Enforcement.

*So ordered.*