18-749-cr
*United States v. Lett*

# United States Court of Appeals
# for the Second Circuit

August Term, 2019

(Argued: October 17, 2019          Decided: December 12, 2019)

Docket No. 18-749-cr

——————————————————

UNITED STATES OF AMERICA,

*Appellant*,

v.

KESTON LETT,

*Defendant-Appellee.*

——————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

——————————————————

Before:

WINTER, POOLER, and PARK, *Circuit Judges*.

The United States appeals a decision of the United States District Court for the Eastern District of New York (Brodie, *J.*) dismissing an indictment against Keston Lett with prejudice. Notwithstanding a district court's release order pursuant to the Bail Reform Act, the government has the authority under the Immigration and Nationality Act to detain a criminal defendant who is an alien

in the course of an administrative removal proceeding.  Therefore, we **VACATE** and **REMAND** with instructions for the district court to reinstate the indictment.

DAVID LIZMI, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Appellant*.

S. ISAAC WHEELER, Federal Defenders of New York, New York, New York *for Defendant-Appellee.*

Park, *Circuit Judge*:

This case presents the question whether a district court's authority to release criminal defendants under the Bail Reform Act ("BRA") is inconsistent with the government's authority to detain aliens under the Immigration and Nationality Act ("INA").  The district court found that these two statutes are in conflict and that a release order pursuant to the BRA precludes the government from detaining a criminal defendant pursuant to the INA.  We conclude that there is no conflict between the detention-and-release provisions of the two statutes, and we hold that immigration authorities may lawfully detain a criminal defendant ordered to be released under the BRA pursuant to their authority under the INA to detain aliens seeking admission into the United

States who are not "clearly and beyond a doubt entitled to be admitted" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Accordingly, we **VACATE** and **REMAND** with instructions for the district court to reinstate the indictment.

# I

Keston Lett is a citizen of Trinidad and Tobago who was arrested at John F. Kennedy International Airport after United States Customs and Border Protection ("CBP") allegedly found 2.12 kilograms of cocaine in his suitcase. CBP paroled Lett into the United States for criminal prosecution and transferred him to the custody of the Bureau of Prisons ("BOP"), and the government filed a criminal complaint charging Lett with importing cocaine in violation of 21 U.S.C. §§ 952(a), 960. That same day, a magistrate judge ordered that Lett be detained pending trial pursuant to the BRA, but granted leave for Lett to renew his bail application at a later date. Meanwhile, United States Immigration and Customs Enforcement ("ICE") lodged an immigration detainer against him. A grand jury later returned a two-count indictment charging Lett with importing cocaine and possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 952(a), 841(a).

At a status conference, Lett renewed his application for pretrial bail. The government argued that Lett was a flight risk given his limited relationship to the United States, but the district court ordered his release. The government did not appeal this ruling and agreed to release Lett from BOP custody. Pursuant to the detainer ICE had lodged against him, BOP transferred Lett to the custody of the Department of Homeland Security, who moved him to an ICE detention facility in New Jersey. Shortly afterwards, ICE initiated removal proceedings against Lett, serving him with a "Notice to Appear" in immigration court. The "Notice to Appear" alleged that Lett was an inadmissible alien subject to removal as a controlled substance trafficker. *See* 8 U.S.C. § 1182(a)(2)(C)(i).

Lett filed a motion to dismiss the indictment in his criminal case, arguing that his continued detention by ICE violated the BRA. The district court heard oral argument on Lett's motion and ordered the government to release Lett within a week "if it intended to proceed with the prosecution." App'x at 89. The district court concluded that, under the BRA, the government had "to either decide to prosecute a defendant such as Mr. Lett or proceed with removal proceedings to deport him, one or the other." App'x at 83. One week later, the government submitted a letter to the district court explaining that ICE would not

4

release Lett from custody. In response, the district court issued an order dismissing the indictment with prejudice. This appeal followed.

**II**

"We review conclusions of law and questions of statutory interpretation *de novo.*" *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001).

**A**

"The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Here, there is no statutory conflict between the detention-and-release provisions of the BRA and the INA.

Congress enacted the BRA to address "the way federal courts consider bail applications and the circumstances under which bail is granted." *United States v. Salerno*, 481 U.S. 739, 742 (1987). Pursuant to the BRA, if a judicial officer, after a hearing, "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other

person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1).

Separately, Congress enacted the INA, 8 U.S.C. § 1101, *et seq.*, which provides that an alien seeking admission into the United States "shall be detained" pending removal proceedings unless that alien is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019) (noting that the INA authorizes the detention of aliens during removal proceedings "to facilitate [their] removal from the country").

The BRA and the INA thus serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention. There is no conflict between the detention-and-release provisions of the two statutes. The government's authority to detain an alien pursuant to the INA "does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *Vasquez-Benitez*, 919 F.3d at 553. A district court's conclusion that a person is not a flight risk or a danger to the community under the BRA has no bearing on whether that individual can demonstrate that he is "clearly and beyond a doubt entitled to be admitted" to

the United States under the INA. 8 U.S.C. § 1225(b)(2)(A). Similarly, a person's release from detention pursuant to the INA would have no bearing on a district court's decision to detain him pursuant to the BRA.

We therefore conclude, as the Third, Sixth, and D.C. Circuits have recently held, that the BRA does not preclude the government from exercising its independent detention authority under the INA. *See United States v. Soriano Nunez*, 928 F.3d 240, 247 (3d Cir. 2019) (holding that "there is no textual conflict between the BRA and the INA," and that "criminal and removal processes can proceed simultaneously"); *Vasquez-Benitez*, 919 F.3d at 553 ("Congress has never indicated that the BRA is intended to displace the INA."); *United States v. Veloz-Alonso*, 910 F.3d 266, 269 (6th Cir. 2018) ("[N]othing in the BRA prevents other government agencies or state or local law enforcement from acting pursuant to their lawful duties.").

The district court below, joining several other district courts in our Circuit and around the country, held to the contrary that pretrial release under the BRA forecloses detention under the INA. *See, e.g.*, *United States v. Boutin*, 269 F. Supp. 3d 24 (E.D.N.Y. 2017); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012); *United States v. Ventura*, No. 17-cr-418, 2017 WL 5129012 (E.D.N.Y.

7

Nov. 3, 2017); *United States v. Galitsa*, No. 17-cr-324, 2017 U.S. Dist. LEXIS 185550 (S.D.N.Y. July 28, 2017). The district court reasoned that the government was required to choose whether it wished "to prosecute a defendant such as Mr. Lett or proceed with removal proceedings to deport him, one or the other." App'x at 83; *see also Trujillo-Alvarez*, 900 F. Supp. 2d at 1179 ("[T]he Executive Branch has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person."); *Ventura*, 2017 WL 5129012, at *2 ("[T]he Executive branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien.").

But neither the BRA nor the INA precludes the government from exercising its detention authority pursuant to the other statute. Nor can the courts order the Executive Branch to choose between criminal prosecution and removal. As the Sixth Circuit observed, "[r]eading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation." *Veloz-Alonso*, 910 F.3d at 270. The BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no

8

conflict between the detention-and-release provisions of the two statutes. The district court's bail release order under the BRA thus did not preclude the government from detaining Lett pursuant to the INA as an inadmissible alien subject to removal.

**B**

Lett's arguments to the contrary are unavailing.

First, Lett argues that the BRA takes precedence over the INA. He points to section 3142(d) of the BRA, which provides that, if a judicial officer determines that a defendant "may flee or pose a danger to any other person or the community" and is "not a citizen of the United States or lawfully admitted for permanent residence," then

> such judicial officer shall order the detention of such person, for a period of not more than ten days, . . . and direct the attorney for the Government to notify the appropriate . . . official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.

18 U.S.C. § 3142(d). Lett argues that this provision provides ICE with one, exclusive avenue for taking custody of criminal defendants, reflecting Congress's

9

understanding that "criminal prosecution generally takes priority over removal, unless the government elects otherwise" during the ten-day statutory period. Appellee's Br. at 9–10. Any other interpretation, he contends, would render the statutory ten-day period "meaningless." *Id*. at 32.

This argument misconstrues section 3142(d). The ten-day period is a limitation on the *district court's* authority to release a defendant pursuant to the BRA. It has no bearing on the *government's* authority to detain a defendant pursuant to the INA at a later date. Section 3142(d) is primarily a "notice provision designed to give other agencies an opportunity to take custody of a defendant before a BRA release order is issued." *Soriano Nunez*, 928 F.3d at 246; *see also id*. ("By providing these other agencies an opportunity to take custody of such persons, the BRA effectively gives respect to pending cases and allows those officials to act before bail is set in the federal case."). "The BRA's temporary detention scheme thus reflects Congress' recognition that immigration authorities . . . have separate interests." *Id*. It does not "give[] a district court the authority to compel another sovereign or judge in federal administrative proceedings to release or detain a defendant." *Id*.

Lett's emphasis on the final clause of section 3142(d) is similarly misplaced. The BRA states that, if an Immigration and Naturalization Service official fails to take custody of an alien criminal defendant during the ten-day statutory period, the defendant "shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.*" 18 U.S.C. § 3142(d) (emphasis added). But this does not preclude the government from detaining a defendant under the INA; it merely clarifies that "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny BRA pretrial release." *Soriano Nunez*, 928 F.3d at 245 n.4. In other words, the district court must apply the BRA as it would to any other criminal defendant, notwithstanding the existence of any parallel proceedings. Indeed, the "notwithstanding" clause supports our conclusion that the INA remains "applicab[le]" to defendants who are released under the BRA after the close of the ten-day statutory period. 18 U.S.C. § 3142(d)(2).

Second, Lett asserts that detention pursuant to the INA is not mandatory and that the government could have exercised its discretion to extend his parole into the United States until the conclusion of his criminal case. Even assuming

that the government could have extended Lett's parole, however, it was under no obligation to do so.  *See* 8 U.S.C. § 1182(d)(5)(A) (providing the Secretary of Homeland Security with discretion to return paroled aliens to ICE custody "when the purposes of such parole shall, in the opinion of the [Secretary of Homeland Security], have been served").  As explained above, the INA plainly authorizes the government to detain an alien seeking admission into the United States in the course of administrative removal proceedings, regardless of the alien's bail status in any parallel criminal proceedings.  *See* 8 U.S.C. § 1225(b)(2)(A).

Third, Lett contends that ICE is barred from deporting criminal defendants during the pendency of their criminal cases—and therefore from detaining such defendants under the INA—pursuant to its own regulations.  *See* 8 C.F.R. §§ 215.2(a), 215.3(g) (together, providing that "[n]o alien" "who is . . . a party to[] any criminal case under investigation or pending in a court in the United States" "shall depart, or attempt to depart, from the United States.").  But these regulations merely prohibit aliens who are parties to a criminal case from departing from the United States *voluntarily*; they do not affect the government's authority *to deport* such aliens pursuant to final orders of removal.  *See, e.g.,*

*United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) (referring to 8 C.F.R. § 215.2(a) as governing "voluntary departure"). This interpretation is confirmed by the remainder of section 215, entitled "Controls of Aliens Departing from the United States," 8 C.F.R. § 215, which is separate from the regulations governing "Removal of Aliens Ordered Removed," *id*. § 236. *See*, *e.g.*, *id*. § 215.2(a) (requiring immigration officers to issue a "written temporary order directing [the alien] not to depart, or attempt to depart, from the United States"); *id*. § 215.4(a) (providing for a hearing at which the alien can contest the denial of his departure); *id*. § 215.6 (providing for a parallel framework for aliens who "seek[] to depart" from the territories of the United States); *id*. § 215.8 (contemplating eligibility for reentry into the United States for departing aliens, subject to certain "departure requirements").

Finally, Lett contends that the government's decision to initiate administrative proceedings and to detain him pursuant to the INA was pretextual and intended to secure his appearance in the criminal case. But the district court did not address this issue, and Lett argued below that it did not need to do so. Accordingly, Lett's pretext argument is waived, and we need not address it. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir.

2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (internal quotation marks and alterations omitted).

**III**

For the foregoing reasons, the judgment of the district court is **VACATED**, and we **REMAND** with instructions for the district court to reinstate the indictment against Lett**.**