17-3904-cr
United States v. Rosario Ventura

# United States Court of Appeals
# For the Second Circuit

August Term, 2022

(Argued: June 26, 2023     Decided:  March 22, 2024)

Docket No. 17-3904-cr

———————————————————

UNITED STATES OF AMERICA,

*Appellant*,

v.

SABA ROSARIO VENTURA,

*Defendant-Appellee.*

———————————————————

Before:

JACOBS,[*] LOHIER, *Circuit Judges*, and RESTANI,[**] *Judge*.

In a prior summary order in this case, we remanded with instructions that the District Court clarify whether it had made "a finding of pretext or bad faith such that the [Immigration and Customs Enforcement's, or ICE's,] detention [of

---

[*] This case returns to us from our prior remand pursuant to United States v. Jacobson, 15 F.3d 19, 21–22 (2d Cir. 1994).  See United States v. Rosario Ventura, 747 F. App'x 20, 22 (2d Cir. 2018).  Judge Peter W. Hall, originally a member of the panel, passed away on March 11, 2021.  Judge Dennis Jacobs replaced Judge Hall on the panel for this matter.

[**] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

Rosario Ventura] constituted a direct violation of" a federal court order releasing him under the Bail Reform Act (BRA), 18 U.S.C. § 3142(b). United States v. Rosario Ventura, 747 F. App'x 20, 22 (2d Cir. 2018) (summary order). The District Court clarified that it dismissed the indictment against Rosario Ventura based on its determination that, after the District Court ordered him released pending trial in his criminal case pursuant to the BRA, ICE detained him pretextually and in bad faith to thwart the bail order. We conclude that the record does not support the District Court's finding that Rosario Ventura's detention was pretextual, and that the finding was therefore clearly erroneous. **REVERSED**.

    Judge Lohier writes for the majority and concurs in a separate opinion.

FRANK TURNER BUFORD (David C. James, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellant* United States of America.

S. ISAAC WHEELER, Federal Defenders of New York, New York, NY, *for Defendant-Appellee* Saba Rosario Ventura.

LOHIER, *Circuit Judge*:

    In United States v. Rosario Ventura, with which we assume familiarity, we remanded this case and instructed the District Court (Irizarry, J.) to clarify whether it had made "a finding of pretext or bad faith such that [Immigration and Customs Enforcement's, or ICE's,] detention [of Rosario Ventura] constituted a direct violation of" a federal court order releasing him under the Bail Reform Act (BRA), 18 U.S.C. § 3142(b). 747 F. App'x 20, 22 (2d Cir. 2018)

2

(summary order). On remand, without conducting an evidentiary hearing or soliciting sworn affidavits, the District Court clarified that Rosario Ventura's detention by ICE "was pretextual and in bad faith because its purpose was not for removal, but rather to detain [Rosario Ventura] pending his criminal trial, as an affront to this Court's bail determination and undermining the Bail Reform Act." United States v. Rosario Ventura, No. 17-cr-418 (DLI), 2023 WL 2787764, at *2 (E.D.N.Y. Apr. 5, 2023). The Government appealed, again asking us to reverse the District Court's decision to dismiss the indictment.

In the intervening period, our Court issued a decision in United States v. Lett, which established a general rule that ICE may, pursuant to its authority under the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b)(2)(A), detain a criminal defendant who is ordered released under the BRA. See 944 F.3d 467, 470 (2d Cir. 2019). Lett "[did] not address" whether pretext may function as an exception, id. at 473, and our prior law has not foreclosed that possibility. Although we posit that pretext might function as an exception to Lett, we need not opine further on that legal issue here, as we conclude that the factual record does not support the District Court's assertion that Rosario

Ventura's detention was pretextual. We accordingly **REVERSE** its orders of November 9, 2017 and April 5, 2023.

## BACKGROUND

### I

Rosario Ventura, a citizen of the Dominican Republic, was arrested on April 7, 2017 after the U.S. Customs and Border Protection (CBP) determined that he had previously been removed from the United States. Rosario Ventura was "paroled for prosecution," Gov't App'x 59, as permitted under 8 U.S.C. § 1182(d)(5)(A) and charged and detained in the Eastern District of New York with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). ICE lodged a detainer[1] against Rosario Ventura on the same day. While still detained, Rosario Ventura was indicted by a federal grand jury for illegally reentering the

---

[1] An ICE detainer "serves to advise another law enforcement agency that [ICE] seeks custody of [a noncitizen] presently in the custody of that agency, for the purpose of arresting and removing the [noncitizen]. The detainer is a request that such agency advise [ICE], prior to release of the [noncitizen], in order for [ICE] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7(a). When ICE issues a detainer for a noncitizen "not otherwise detained by a criminal justice agency," – for example, as a result of having been granted bail under the BRA – "such agency shall maintain custody" of the noncitizen "for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by" ICE. *Id.* § 287.7(d).

United States. With counsel's help, Rosario Ventura moved for bail pending trial under the BRA. After conducting a hearing, the Magistrate Judge (Pohorelsky, M.J.) granted bail and ordered Rosario Ventura released on a $25,000 bond. But the ICE detainer kept Rosario Ventura in jail until August 15, 2017, when he was officially transferred into ICE custody. That same day, ICE served Rosario Ventura with a Notice to Appear (NTA), which charged him as removable under §§ 212(a)(7)(A)(i)(I) and 212(a)(9)(A)(ii) of the INA (codified at 8 U.S.C. § 1182(a)). The Government meanwhile appealed the Magistrate Judge's bail order to the District Court, which heard arguments from the parties and then affirmed the order in August 2017. Rosario Ventura remained in ICE custody.

## II

In September 2017, three weeks after the District Court affirmed the Magistrate Judge's bail order, Rosario Ventura, still in ICE custody, moved for an order to compel ICE to release him pursuant to the previously imposed bond conditions or to dismiss the indictment with prejudice in the event the Government refused to release him. "The purpose of his continued detention," Rosario Ventura insisted, was "solely to hold [him] in connection with his criminal case" rather than his immigration case. Dist. Ct. Dkt. No. 23 at 2–3. The

5

Government opposed the motion, arguing that ICE had "independent statutory authority" to detain Rosario Ventura pending a final determination of his removability. Dist. Ct. Dkt. 25 at 5, 7. The Government also responded that ICE's detention was not pretextual because Rosario Ventura's removal proceedings were "being litigated in a manner consistent with the usual pace of such matters." Dist. Ct. Dkt. 25 at 9.

By order dated November 3, 2017, the District Court granted Rosario Ventura's motion and directed the Government to either release Rosario Ventura on the bond conditions set for his release in the criminal case or dismiss the indictment with prejudice. The District Court gave the Government until 3 pm on November 9, 2017 to choose, explaining that the BRA "provides the exclusive means by which the Government may detain a removable alien pending trial in a criminal case," United States v. Rosario Ventura, No. 17-cr-418 (DLI), 2017 WL 5129012, at *2 (E.D.N.Y. Nov. 3, 2017) (quotation marks omitted); that, more generally, "the Executive Branch should decide where its priorities lie" as between criminal prosecution and immigration removal proceedings, id.; and that the Government had previously suggested that ICE's decision to detain

Rosario Ventura was prompted by its disagreement with the District Court's

assessment of Rosario Ventura's risk of flight, id. at *3.

On November 9, 2017, the Government informed the District Court that

ICE "was not prepared to release" Rosario Ventura. Rosario Ventura, 2023 WL

2787764, at *2. The District Court dismissed the indictment with prejudice that

same day. The following month, December 2017, Rosario Ventura was released

from ICE custody on a $15,000 bond following a successful habeas petition filed

in the Southern District of New York. See Judgment, Rosario Ventura v. Decker,

No. 17-cv-8889 (RA) (S.D.N.Y. Dec. 6, 2017), ECF No. 11.

The Government appealed the District Court's dismissal of the indictment

to this Court even before Rosario Ventura was released from ICE custody. See

Dist. Ct. Dkt. No. 35. We remanded the case pursuant to United States v.

Jacobson, 15 F.3d 19, 21–22 (2d Cir. 1994), and directed the District Court to

"clarify, and explicate its rationale therefor, whether its observation that DHS's

continued detention constituted an affront to the mandates of the Bail Reform

Act, and a potential attempt to obviate the bond determination of [the District

Court], was tantamount to a finding of pretext or bad faith such that the ICE

7

detention constituted a direct violation of the magistrate judge's order."  Rosario

Ventura, 747 F. App'x at 22 (quotation marks omitted).[2]

In December 2019, while this matter remained pending before the District

Court on remand, our Court issued a decision in United States v. Lett, which

held that "immigration authorities may lawfully detain a criminal defendant

ordered to be released under the BRA pursuant to their authority under the INA

to detain [those] seeking admission into the United States who are not 'clearly

and beyond a doubt entitled to be admitted' for removal proceedings."  944 F.3d

at 469 (quoting 8 U.S.C. § 1225(b)(2)(A)).

**III**

On remand, the District Court held an initial status conference and

ordered briefing on the issues raised in our summary order.  Thereafter, the

District Court held oral argument to discuss "follow-up questions for the parties

that . . . would be helpful to the Court in clarifying its previous decision."  Supp.

---

[2] We did not consider then – and do not consider today – whether it was appropriate for the District Court to apply the "extreme sanction and [] drastic remedy" of dismissing the indictment.  United States v. Halloran, 821 F.3d 321, 342 n.14 (2d Cir. 2016) (quotation marks omitted).  The Government never challenged the propriety of the remedy before the District Court.  We therefore consider any such argument forfeited for the purposes of the current appeal.  See Parada v. Banco Indus. De Venezuela, C.A., 753 F.3d 62, 70 (2d Cir. 2014).

Gov't App'x 2. During the oral argument, Rosario Ventura "conceded," as he did on appeal, "that ICE has the authority to initiate removal proceedings against a federal criminal defendant." Supp. Gov't App'x 15. He maintained, however, that the clash between the Government's actions and its representations to the District Court "supports a factual finding . . . that in this case . . . the Defendant's detention was not designed to effectuate his removal" but rather "to extend his detention for purposes of prosecution." Supp. Gov't App'x 32.

The District Court issued its order in response to our remand on April 5, 2023. Noting that Lett "explicitly held that the defendant's pretext argument had been waived," Rosario Ventura, 2023 WL 2787764, at *5 (citing Lett, 944 F.3d at 473), the District Court "clarified" that, notwithstanding ICE's legal authority to detain a defendant who was released under the BRA, ICE's detention of Rosario Ventura was, under the circumstances, "pretextual and in bad faith because its purpose was not for removal, but rather to detain [him] pending his criminal trial, as an affront to [the District] Court's bail determination." Id. at *2. Key to the District Court's decision was the Government's concession that ICE may have detained Rosario Ventura because it "disagree[d] with the two decisions by [the District Court] as to the defendant's risk of flight," see id. at *3 (alteration

9

omitted), together with what the District Court characterized as a sequence of events "border[ing] on the 'Kafkaesque,'" in which the Government initially paroled Rosario Ventura into the country for prosecution, only to immediately initiate removal proceedings after Rosario Ventura was released under the BRA, see id. An additional factor, noted the District Court, was "the Government's disparate treatment of other defendants who were similarly situated to Defendant." Id. at *4.

The Government appealed the order directly to our panel pursuant to Jacobson. At our instruction, both parties then filed supplemental briefs.

## DISCUSSION

When "the district court's dismissal of the indictment raises questions of law, our review is de novo." United States v. Alfonso, 143 F.3d 772, 775 (2d Cir. 1998). We review a district court's factual findings underlying a dismissal of the indictment for clear error. See United States v. Walters, 910 F.3d 11, 22 (2d Cir. 2018).

## I

In Lett, we held that ICE's detention of a criminal defendant ordered released under the BRA is lawful per se. See 944 F.3d at 470–71. As the District

Court noted, we did not address Lett's separate argument that "the government's decision to initiate administrative proceedings and to detain him pursuant to the INA was pretextual and intended to secure his appearance in the criminal case," because we determined that the argument was forfeited. Id. at 473. We recognize that pretext may function as an exception to Lett and that a petitioner shoulders the burden of demonstrating that his detention was pretextual. Cf. Walters, 910 F.3d at 27. In meeting that burden, it is not enough for him to show that the immigration authorities discontinued parole, initiated a new removal proceeding, and detained him upon his release under the BRA. After all, in Lett we held that almost precisely the same government conduct was lawful. See 944 F.3d at 472.

Urging a contrary conclusion, Rosario Ventura insists that it is enough for him to show that ICE's detention of a criminal defendant in these circumstances is pretextual and in bad faith if the defendant is "subject to summary expulsion" under 8 U.S.C. § 1225(b)(1)(A)(i), since this means that ICE deliberately chose the slower path to removal by initiating a new removal proceeding and detaining the defendant. See Rosario Ventura Supp. Br. 1. We are not persuaded. Immigration authorities have discretion to remove qualifying individuals

"without further hearing or review."  8 U.S.C. §§ 1225(b)(1)(A); <u>see also</u>

1225(b)(1)(A)(iii)(I).  We do not "look behind the exercise of that discretion"

unless there is reason to believe that the agency's decision was not based on a

"facially legitimate and bona fide reason."  <u>Bertrand v. Sava</u>, 684 F.2d 204, 212

(2d Cir. 1982) (quotation marks omitted); <u>see also</u> <u>Dep't of Commerce v. New

York</u>, 139 S. Ct. 2551, 2573 (2019) ("[A] court is ordinarily limited to evaluating

the agency's contemporaneous explanation in light of the existing administrative

record" because "judicial inquiry into executive motivation represents a

substantial intrusion into the workings of another branch of Government and

should normally be avoided." (quotation marks omitted)).

For that reason, even when a defendant is subject to summary expulsion, a

claim that ICE acted pretextually in detaining the defendant must still be backed

by evidence that the detention served the criminal prosecution, not removal.

Among the clearest examples of pretextual immigration detention are cases

where the defendant's immigration proceedings come to a standstill following

detention, so that the purpose of the immigration detention becomes simply to

hold the defendant pending the criminal trial; or where the logistics involved in

12

the immigration detention make it difficult to afford defendants the rights to which they are entitled in criminal cases.

## II

In our 2018 summary order, we instructed the District Court to "clarify" whether it had made a factual finding of pretext.  On remand, the District Court held an initial status conference with attorneys for both parties.  Rosario Ventura, 2023 WL 2787764, at *2.  That initial conference was followed a few months later by oral argument addressing "follow-up questions . . . that . . . would be helpful to the Court in clarifying its previous decision," Supp. Gov't App'x 2, and a subsequent status conference, during which Judge Irizarry requested that the parties submit "a joint letter discussing cases in this District with similar issues that were decided subsequent to this case . . . . "  Rosario Ventura, 2023 WL 2787764, at *2.

The District Court described these conferences, the oral argument, and briefing from the parties as "supplement[ing]" the record "to clarify and explain further its rationale as to why [Rosario Ventura's] continued detention by ICE was pretextual."  Id.  But the District Court's "clarification" or "supplementation" in this case does not appear to have been based on facts (as

13

opposed to legal argument) that could support quintessentially <u>factual</u> findings such as pretext, bad faith, or government misconduct.  In other words, the District Court's "findings" are not supported by any evidence in the record.  <u>See</u> <u>Wu Lin v. Lynch</u>, 813 F.3d 122, 127 (2d Cir. 2016) (explaining that district courts commit clear error when there is "no evidence at all to support a finding of fact").

Where a criminal defendant moves to dismiss an indictment due to alleged government misconduct, "conducting a hearing is the preferred course of action" if "disputed factual issues exist."  <u>United States v. Cuervelo</u>, 949 F.2d 559, 567 (2d Cir. 1991).  We have affirmed factual findings made without the benefit of an evidentiary hearing in such cases only "where the relevant facts can be ascertained from the record," <u>United States v. Pavloyianis</u>, 996 F.2d 1467, 1475 (2d Cir. 1993), or where "the facts [are] not in dispute," <u>United States v. LaPorta</u>, 46 F.3d 152, 160 (2d Cir. 1994).

In <u>Pavloyianis</u>, for example, we were satisfied that no evidentiary hearing was necessary to determine whether a prosecutor had engaged in misconduct because the district court had ordered the Government to submit affidavits and, on the basis of those affidavits, found "that there was not the slightest indication

or evidence that the trial prosecutor" had engaged in misconduct. 996 F.2d at 1475 (quotation marks omitted). For this reason, we concluded, "the relevant facts" could "be ascertained from the record." Id. More recently, in Walters, we agreed with the district court "that a further hearing would not [have] assist[ed] in the resolution of the issues raised by Walter's motion to dismiss" because the Government had already provided the district court "with a detailed summary of its findings" from "an internal inquiry," and the defendant had "submitted multiple briefs and a declaration in response to the Government's letter." 910 F.3d at 28–29.

By contrast, we reversed a district court's determination that the Government committed misconduct where the district court declined to hold an evidentiary hearing and concluded that the sequence of events leading up to the indictment alone supported a "prime facie case" of misconduct. United States v. Johnson, 171 F.3d 139, 141–42 (2d Cir. 1999). We reinstated the indictment because the defendant presented "no direct evidence" of government misconduct as would be necessary to support dismissing the indictment. Id. at 142.

We acknowledge that our prior instruction, as part of the <u>Jacobson</u> remand, that the District Court "clarify" its rationale for dismissing the indictment was itself not very clear. But the record in this case falls short of what we found sufficient in <u>Pavloyianis</u> and <u>Walters</u> to obviate the need for an evidentiary hearing as to whether the Government engaged in misconduct. As noted above, after <u>Lett</u>, the chronology that the District Court cited — of ICE's presumptively lawful and discretionary decisions to terminate parole, initiate a new removal proceeding, and detain Rosario Ventura — does not itself justify a factual finding of pretext. Nor is it enough that ICE, in the exercise of its discretion and as it was entitled to do, elected sometimes to summarily remove and sometimes to continue parole for similarly situated criminal defendants.

Of course, the District Court was entirely free to rely on the government attorney's statement at oral argument that "it could be that ICE disagrees with the two decisions by [the District] Court as to [Rosario Ventura's] risk of flight." <u>Rosario Ventura</u>, 2023 WL 2787764, at *3. But it was not free to rely on it entirely. Rather than a "concession" that Rosario Ventura's detention by ICE was pretextual, <u>id.</u>, the statement was, when viewed in context, hypothetical and unsupported by testimony or affidavits from ICE officials or other relevant

16

parties. We note, too, that the government attorney later plausibly clarified his statement, as follows: "What I meant, Your Honor, is not that they tried to overrule this Court's determination within the criminal context, but rather they faced the same question that this Court faced within the context of the administrative proceeding and just reached a different conclusion." Gov't App'x 48. So although the District Court could and did consider the attorney's original statement, the record is devoid of any "relevant facts [that] can be ascertained" about ICE's actual motivation in detaining Rosario Ventura. Pavloyianis, 996 F.2d at 1475. Even after our initial remand, Rosario Ventura did not present direct evidence that could support a factual finding of pretext or bad faith. See Johnson, 171 F.3d at 142.

We therefore reverse the District Court's November 9, 2017 order dismissing the indictment, as well as its April 5, 2023 order "clarifying" that it had based the dismissal on a finding of pretext. Without any factual record that ICE's detention of Rosario Ventura was pretextual or in bad faith, we conclude that the finding was clearly erroneous. See Wu Lin, 813 F.3d at 127.

17

## CONCLUSION

For the foregoing reasons, the November 9, 2017 and April 5, 2023 orders

of the District Court are **REVERSED**.

LOHIER, *Circuit Judge*, concurring:

In United States v. Lett, we recognized a general rule that ICE may, pursuant to its authority under the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b)(2)(A), detain a criminal defendant who is ordered released under the Bail Reform Act (BRA), 18 U.S.C. § 3142. See 944 F.3d 467, 470 (2d Cir. 2019). We also acknowledged that an exception to the general rule might exist when the Government's decision to initiate administrative proceedings and to detain a criminal defendant pursuant to the INA is pretextual and intended to secure his appearance in the criminal case. The exception arises because "[t]he BRA and the INA . . . serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention." Id. In Lett, we declined to address the issue head-on because the defendant never pressed it to the District Court.

Left to my own devices, I would have addressed the question left open in Lett because we previously answered it in a summary order issued earlier in this case. See United States v. Rosario Ventura, 747 F. App'x 20, 22 (2d Cir. 2018). There we said that "a finding of pretext or bad faith such that the ICE detention

constituted a direct violation of" a court order would support affirming the District Court's decision.  Id.  We thus clearly assumed that the Government may not misuse its broad detention authority under the INA just to ensure that a criminal defendant appears in his criminal case.  See id.

Our assumption was, of course, correct.  Where immigration authorities detain a criminal defendant ordered released under the BRA merely to further the interests of the Government in connection with the defendant's criminal proceeding rather than to remove him, the defendant's continued detention is unlawful because it violates the district court's bail order, does nothing to advance the goals of the INA, and is a pretextual exercise of statutory authority.  Cf. United States v. Miller, 626 F.3d 682, 689 (2d Cir. 2010) ("[I]t is a well-established 'basic proposition that all orders and judgments of courts must be complied with promptly' and that while a party has a right to appeal the order, 'absent a stay, he must comply promptly with the order pending appeal.'"

(quoting <u>Maness v. Meyers</u>, 419 U.S. 449, 458 (1975))).  And correct or not, that is the governing law of this case.

But the record does not support the District Court's finding of pretext here. For this reason, and for the reasons provided in the majority opinion, I fully agree that the District Court should reinstate the indictment.