RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-3973

CESAR VELOZ-ALONSO,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00464-1—James S. Gwin, District Judge.

Decided and Filed:  December 6, 2018

Before:  SUHRHEINRICH, BATCHELDER, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Danielle K. Angeli, Rebecca C. Lutzko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant.  Vanessa F. Malone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellee.

───────────────

## OPINION

───────────────

ALICE M. BATCHELDER, Circuit Judge.  This case is about an illegal alien with a final deportation order who was criminally prosecuted and pleaded guilty to illegally reentering the country.  The district court released him on bail prior to sentencing.  Finding a statutory conflict, the district court issued an order preventing the United States Immigration and Customs Enforcement (ICE) from detaining or deporting him prior to sentencing.  The government

appealed the order preventing its agents from acting pursuant to their statutory mandates.  The district court erred in its statutory finding and in issuing its order.  We **REVERSE**.

## I.

This case involves two Article II agencies navigating their own competing statutory requirements while an Article III adjudication commences.  Cesar Veloz-Alonso (Veloz-Alonso) is a native and citizen of Mexico who entered the United States illegally in the early 1990s.  He was removed in 1997, 1999, and 2008.  In June 2018, Veloz-Alonso was discovered again, having for a third time illegally reentered, and was detained by ICE.  In August 2018, Veloz-Alonso was indicted on a charge of illegal reentry in violation of 18 U.S.C. § 1326.  He was detained pending trial.  In October 2018, Veloz-Alonso pleaded guilty and moved for release on bail pending sentencing.

Under the Bail Reform Act (BRA), a defendant found or pleading guilty must be detained unless the district court finds by clear and convincing evidence that he is not a flight risk or a danger to the safety of the community.  18 U.S.C. § 3143(a)(1).  The district court held hearings on the motion for release.  The government argued that Veloz-Alonso was a flight risk because, in addition to his repeated willingness to violate federal law, Veloz-Alonso was subject to a reinstated order of removal and an ICE detainer.  If release on bond were granted, the government asserted, Veloz-Alonso would be taken into custody by ICE, removed, and thus unable to attend a sentencing hearing.

The district court granted the motion for release pending sentencing subject to conditions, including electronic monitoring and a property lien on his house.  The district court found that Veloz-Alonso demonstrated by clear and convincing evidence that he was not a flight risk or a danger to the community.  The district court found that a defendant subject to removal under the Immigration and Naturalization Act (INA)[1] is not per se ineligible for bail.  As part of its reasoning, the district court cited several district court opinions finding that the BRA supersedes the INA during an Article III adjudication.  *See, e.g.*, *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012).  In addition to a statutory construction argument, the district court

---

[1]8 U.S.C. § 1101, *et seq.*

also raised a separation of powers concern. "[The government's] position smacks of a threat to the judiciary not to disagree with [its] bond position." As part of its order granting release, the district court ordered the government, under threat of contempt, "to refrain from detaining or deporting the Defendant while he is released pending sentencing."

The government appeals the district court's order prohibiting ICE from detaining or deporting Veloz-Alonso. The government also argues that the district court committed reversible error by finding a conflict between the BRA and the INA and prohibiting ICE from fulfilling its mandatory statutory duties pursuant to a valid final removal order under the INA.

**II.**

We review "a district court's factual findings concerning release pending sentencing for clear error" and review legal conclusions de novo. *United States v. Christman*, 596 F.3d 870, 870 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

An inevitable conflict arising from decades-old immigration laws has predictably found its way to the doorstep of the judiciary. The precise issue before us today has never been directly addressed by our sister circuits or the Supreme Court. We take this opportunity to provide some guidance on the issue.

Several district courts around the country have found, as the district court here did, that the BRA and INA pose a conflict. "This issue arises in the collision between the Immigration and Naturalization Act and the Bail Reform Act." The preeminent case standing for this proposition is *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012). *Trujillo-Alvarez* and similar cases (*e.g.*, *United States v. Boutin*, 269 F.Supp.3d 24 (E.D.N.Y. 2017); *United States v. Garcia*, No. 18-cr-20256, 2018 WL 3141950 (E.D. Mich. June 27, 2018); *United States v. Ventura*, No. 17-cr-418, 2017 WL 5129012 (E.D.N.Y. Nov. 3, 2017)) find that when the government has detained an illegal alien, "[T]he Executive has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person." *Trujillo-Alvarez*, F. Supp. 2d at 1179. Other cases in this line find the same binary framework. "The Executive branch should decide where its priorities lie: either with a prosecution in federal

district court or with removal of the deportable alien." *Ventura*, 2017 WL 5129012, at *2. This framework creates a problem when the government attempts to pursue both options simultaneously. When those pursuits come into tension, courts following the *Trujillo-Alvarez* framework have held that once an alien is submitted for criminal prosecution, the statutory permissions of the BRA supersede the statutory mandates of the INA. We do not agree.

A long-established canon of statutory interpretation instructs that, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intent to the contrary, to regard each as effective . . . ." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). The section of the Bail Reform Act under which the district court granted Veloz-Alonso's release states:

> **(a)    Release or detention pending sentence**—(1) except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a). Section 3143 imports much of the language of § 3142 that covers the "Release or detention of a defendant pending trial . . . ." Section 3142 specifically contemplates the release of illegal aliens, instructing "the attorney for the government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service" when the judicial officer orders the temporary detention or conditional release of an illegal alien. 18 U.S.C. § 3142(d). The pretrial or presentencing release of illegal aliens is clearly *permitted* under BRA.

As the government points out, however, nothing in the BRA prevents other government agencies or state or local law enforcement from acting pursuant to their lawful duties. Rather, the BRA imposes a presumption of detention for criminal defendants pending trial (§ 3142) or sentencing (§ 3143) that defendants must overcome by a showing of "clear and convincing evidence." Release of a criminal defendant is permissive after such a showing.

The INA, while discretionary in many situations, is mandatory in others. As it pertains to illegal aliens with final deportation orders, such as Veloz-Alonso, there is no ambiguity: ICE is authorized and mandated under the INA to detain and deport. The relevant sections state in part:

**(a) Detention, release, and removal of aliens ordered removed**

(1)(C) *Suspension of period*. The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal.

(2) *Detention*. During the removal period, the Attorney General shall detain the alien.

(5) *Reinstatement of removal orders against aliens illegally reentering*. If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for relief under this chapter, and the alien shall be removed under the prior order *at any time* after the reentry. (emphasis added)

8 U.S.C. § 1231(a). Taking these provisions together, ICE is under mandatory instruction to detain and deport an alien illegally reentering after a final removal order. While the INA provides some discretion as to *when* such a deportation must take place in this scenario, there is no discretion as to whether the alien must be detained and deported. And removal of such an alien is permissible even after imposition of a criminal sentencing, but "before the alien has completed a sentence of imprisonment . . . if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense . . . and (II) the removal of the alien is appropriate and in the best interest of the United States." 8 U.S.C. § 1231(a)(4)(B)(i).

The district court held that its order of release under the BRA superseded the statutory mandate of the INA. While the district court correctly found that deportable aliens are not per se ineligible for bail, it incorrectly extended that finding to also infer that an alien released on bail is ineligible for detention. The district court held that because "the United States has determined that prosecuting this case is more important than immediate deportation," the government must suspend its administrative actions under the INA until the conclusion of the judicial proceedings. This is incorrect as a matter of law.

Veloz-Alonso questions whether the detain-and-deport provisions of INA are actually mandatory if ICE may use its discretion to delay deportation and "release" him to the U.S. Attorney's office for prosecution. While other district courts have raised similar questions, we are not convinced that such a transfer of detention constitutes a "release" for purposes of the INA, nor has Veloz-Alonso provided any substantive basis to find otherwise. Directly detaining or ensuring detention through U.S. Marshals is not an abuse of ICE's discretion. In fact, such an argument buttresses the government's position here that if the alien is released by the district court under the BRA, ICE will be required to detain and deport.

Therefore, we find no conflict between the BRA and INA in the manner which the *Trujillo-Alvarez* cases and the district court here ruled. The BRA presumes detention but allows for the permissive release of a criminal defendant. The INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation. One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings. To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict and the district court may not enjoin the government's agents.

**III.**

For the foregoing reasons, we hold that ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination. The district court erred in finding that the BRA and INA must be read to conflict. We therefore **REVERSE** the order of the district court enjoining the government from detaining Veloz-Alonso pending sentencing.