<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**July 6, 2020**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSE LUIS BARRERA-LANDA,

     Defendant - Appellant.

No. 20-4044
(D.C. No. 2:20-CR-00085-HCN-1)
(D. Utah)

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:20-CR-00085-HCN-1)**
_____

Submitted on the briefs:[*]

Scott Keith Wilson, Federal Public Defender, Benjamin C. McMurray, Assistant Federal Defender, Salt Lake City, Utah, for Defendant-Appellant.

John W. Huber, United States Attorney, Felice John Viti, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **HARTZ**, Circuit Judges.
_____

**TYMKOVICH**, Chief Judge.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Jose Luis Barrera-Landa appeals from the district court's release order. The district court ordered Mr. Barrera[1] released pending trial subject to the conditions the magistrate judge set in an earlier order. Mr. Barrera does not appeal from that portion of the district court's release order. As part of its order granting pretrial release, the district court denied Mr. Barrera's request to enjoin the United States Immigration Customs and Enforcement (ICE) from detaining or deporting him during the pending criminal proceedings. Mr. Barrera appeals from that portion of the district court's release order. Exercising our jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

I.

This appeal involves the relationship between the detention and release provisions of two statutes: the Bail Reform Act (BRA), 18 U.S.C. §§ 3141-3156, and the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537. Congress passed the BRA to address whether and under what circumstances a district court may release a defendant pending trial. *See United States v. Salerno*, 481 U.S. 739, 742-43 (1987). The BRA requires the pretrial release of a defendant unless "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The BRA also contains a temporary detention provision "for persons not lawfully admitted to the United States, as well as individuals who are on pretrial

---

[1] In his appeal brief, counsel refers to defendant-appellant as "Mr. Barrera" so that is how we refer to him in this decision.

2

or post-conviction release on other federal, state, or local charges, so that immigration and other officials can take custody of such individuals before BRA conditions of release are set." *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2019) (citing 18 U.S.C. § 3142(d)). "Other than during this temporary detention period, . . . non-citizen defendants are treated the same as other pretrial criminal defendants under the BRA." *Id*. at 244-45.

The INA gives the Attorney General the power to issue warrants for arrest and to seek the detention or release of an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Aliens who have committed certain criminal offenses must be detained pending removal. *See id.* § 1226(c)(1). And ICE may issue a detainer when an alien is in the custody of another governmental entity. *See id.* § 1357(d). "Via the detainer, ICE informs the agency that it 'seeks custody' of such an alien 'for the purpose of arresting and removing' the alien." *Soriano Nunez*, 928 F.3d at 245 (quoting 8 C.F.R. § 287.7(a)).

## II.

Mr. Barrera is a native and citizen of Mexico. He was removed from this country in 2011 based on a final order of removal. At some point, he reentered the country. Earlier this year, ICE arrested him and reinstated his prior order of removal. He was subsequently charged with re-entry of a previously removed alien, in violation of 8 U.S.C. § 1326, and immigration officials brought him to the courthouse to appear on this charge. At his initial hearing, the government sought detention.

Mr. Barrera initially waived pretrial release to participate in the Fast Track program,[2] and the district court entered a detention order, remanding him to the custody of the U.S. Marshals. Because Mr. Barrera was subject to a reinstated order of removal, ICE lodged a detainer seeking his custody for immigration purposes when he was due to be released from the custody of the U.S. Marshals.

Mr. Barrera subsequently moved for review of his detention order by the magistrate judge. He asserted that he no longer wished to participate in the Fast Track program and he requested that he be released pursuant to § 3142(e)(1). The government filed a response in opposition to Mr. Barrera's release request, arguing that he was a danger to the community and no conditions could assure his appearance at future court proceedings or the safety of the community. In his reply, Mr. Barrera continued to assert that he met the standards for pretrial release under § 3142(e)(1). He also argued that if he was released pretrial, the district court should enjoin ICE from taking custody of him during his pending criminal proceeding.

After holding a hearing on the motion, a magistrate judge determined that Mr. Barrera could be released pretrial subject to certain conditions. The magistrate judge denied Mr. Barrera's request to enjoin ICE from taking him into custody after his release, agreeing with a number of other circuits that have held the government

---

[2] The Fast Track program allows for a downward departure in a defendant's sentencing guideline range if he agrees to early disposition of his case. *See generally United States v. Lopez-Macias*, 661 F.3d 485, 486-87 (10th Cir. 2011).

has the authority to proceed down the dual tracks of criminal prosecution and immigration enforcement at the same time.

The government sought de novo review of the magistrate judge's decision releasing Mr. Barrera on conditions. It also requested a stay of the release order pending the district court's review. The magistrate judge granted the stay. The district court held a hearing on the government's motion, but ultimately agreed that Mr. Barrera could be released pretrial subject to the conditions the magistrate judge had imposed. The court also denied Mr. Barrera's request to enjoin ICE from detaining or deporting him during his pending criminal proceedings.[3] The government did not appeal from the district court's order releasing Mr. Barrera with conditions and Mr. Barrera likewise does not challenge that portion of the release order. Mr. Barrera appeals the portion of the release order denying his request to enjoin ICE from detaining him or deporting him while he is on pretrial release.

III.

"In general, we apply de novo review to mixed questions of law and fact concerning a district court's detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *United States v. Doby*, 928 F.3d 1199, 1202 (10th Cir. 2019) (internal quotation marks and brackets omitted). This appeal, however, does not involve any challenges to the district court's decision to release Mr. Barrera pretrial subject to

---

[3] Mr. Barrera filed a stipulated motion to stay his release pending this appeal, which the district court granted.

conditions. Instead, this appeal involves a purely legal question about the interplay between the BRA and the INA that we review de novo. *See id.* at 1202, 1204 (reviewing de novo purely legal issue in bail appeal).

A.

We first consider what arguments were raised in the district court and are properly before this court on appeal. In his reply in support of his motion for magistrate judge review of the initial detention order, Mr. Barrera argued, "[w]hen ICE takes custody of an individual, it can seek either to pursue removal in lieu of prosecution or to have the individual prosecuted and then issue a final administrative order of removal after the conclusion of the criminal case." Aplt. Unsealed App. at 48. He asserted that ICE was required under 8 U.S.C. § 1231(a) to remove him within ninety days once it reinstated his prior order of removal. He further asserted that ICE violated § 1231(a) by deferring his removal to facilitate the criminal prosecution against him, and that by doing so, the "executive branch . . . submitted to the laws that govern criminal proceedings, including the [BRA], 18 U.S.C. § 3142." Aplt. Unsealed App. at 48. Mr. Barrera acknowledged that § 3142(d) permitted the detention of an individual for ten days during which immigration could take custody of the individual, but noted that his detention had far exceeded the ten-day waiting period. He also asserted that the ten-day waiting period would not have been appropriate in any event because ICE had relinquished custody to the executive branch, citing again to § 3142(d).

6

Mr. Barrera did not file any further briefing on the issue in district court. At the hearing on the government's motion for district court review, the district court sua sponte raised the issue. The court asked the parties to "discuss whether the Government's decision to prosecute Mr. Barrera has any impact on ICE's ability to detain and/or deport the Defendant." *Id.* at 138.

Counsel for Mr. Barrera responded:

> [O]ur argument in a nutshell is that under the statute and the applicable regulations, when ICE issues the final removal order, they have the obligation to remove that individual and lack the discretion to release that individual.
>
> In this case, ICE failed to comply with those laws and, instead of removing Mr. Barrera, ICE agents literally brought him to the federal courthouse and handed him over to the Department of Justice. Having relinquished custody, it would be improper for them to now assert custody when they were the ones who made the choice to hand him over. And by choosing to deliver him to the Department of Justice for prosecution, ICE effectively made the choice to submit to the rules that apply to criminal proceedings.
>
> If you order that he is to be released and live at a certain place and comply with certain conditions, all must honor that order, both Mr. Barrera, as well as Immigration.

*Id*. at 140. For support, he cited to *United States v. Baltazar-Sebastian*, 429 F. Supp. 3d 293 (S.D. Miss. 2019). Counsel also asserted his belief that the detainer issued in the case was illegal, relying on 8 U.S.C. § 1357(d). His final argument was for the district court "to consider release . . . under the standards that would apply to a temporary restraining order [TRO], which this court has equitable authority to issue." Aplt. Unsealed App. at 150.

7

Mr. Barrera raises two new arguments on appeal. He argues that 18 U.S.C. § 3142(c) authorizes a district court to prohibit the United States from deporting a defendant to assure his appearance in court. He also argues that "[t]his court should recognize the courts' inherent supervisory authority to enjoin the United States from arresting or deporting Mr. Barrera while the criminal case is pending." Aplt. Mem. Br. at 9.[4] When a litigant fails to raise an argument in district court, we typically treat that argument as forfeited. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). And we will only reverse a district court decision on a forfeited argument if the appellant satisfies the standard for plain error. *See id.*; *see also United States v. Kearn*, 863 F.3d 1299, 1305 (10th Cir. 2017). But here, Mr. Barrera does not even attempt to show how these newly-raised arguments satisfy the standard for plain error. He has therefore waived them. *See Kearn*, 863 F.3d at 1313 (concluding that appellant waived issue by failing to argue for plain error).[5]

---

[4] Although Mr. Barrera told the district court it had "equitable authority" to enjoin the government under the standards applicable to a TRO, his argument on appeal about the court's "inherent supervisory authority" to enjoin the government goes far beyond the passing reference he made to the district court. "[D]iscussing a theory only in a vague and ambiguous way below is not adequate to preserve issues for appeal." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1988). Thus, even if the argument he makes on appeal about the court's "inherent supervisory authority" to enjoin the government is meant to refer to the same "equitable authority" he mentioned to the district court, his passing reference to that court's "equitable authority" to enjoin the government was so vague and poorly developed that it was not sufficient to preserve his argument for appeal. The argument he now makes is essentially a new argument that was not raised in the district court.

[5] Although Mr. Barrera argued in district court that his detainer was illegal, he does not raise that argument on appeal. We deem this argument waived. *See Krastev*

8

B.

We now turn to Mr. Barrera's remaining argument. He argues that the government has to choose to either proceed with immigration enforcement or his criminal prosecution, but cannot do both. He asserts that if the government chooses to prosecute, it must submit to the detention rules that govern criminal prosecutions and ICE cannot detain or remove him. The district court denied Mr. Barrera's request to enjoin ICE, explaining that every circuit that has addressed the issue has concluded that ICE may fulfill its statutory duties under the INA to detain an illegal alien regardless of a release determination under the BRA. The district court found those cases persuasive, noting that "'[n]othing in the text of the BRA prevents ICE from enforcing a detainer or taking a [d]efendant into custody for removal proceedings after an order of release under the BRA.'" Aplt. Unsealed App. at 158 (quoting *Soriano Nunez*, 928 F.3d at 246). For the reasons that follow, we agree with the district court's decision and join the five circuits that have concluded there is no conflict between the BRA and the INA and that a release order under the BRA does not preclude removal under the INA.

Mr. Barrera is subject to a lawful immigration detainer and a valid, preexisting removal order. Although Mr. Barrera's criminal case is pending, the BRA does not give the district court authority to interrupt ICE's independent statutory obligations to take custody of Mr. Barrera once he is released. As the D.C. Circuit explained,

*v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

9

"ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019). That court further explained, "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." *Id*. at 552; *see also United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019) ("The BRA and the INA . . . serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention."). Neither statute "precludes the government from exercising its detention authority pursuant to the other statute," and courts cannot "order the Executive Branch to choose between criminal prosecution and removal." *Lett,* 944 F.3d at 471. Instead, "[t]he BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously." *Id*.

Our decision in *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017) (per curiam), while not addressing the specific question presented here, contemplated parallel criminal and immigration proceedings that would permit a defendant to be released pursuant to the BRA and then detained by ICE under the INA. In that case, the defendant, like Mr. Barrera, was subject to a reinstated order of removal and ICE had lodged a detainer requesting custody of the defendant if he was released from the custody of the United States Marshals. *Id*. at 1336. The government argued that the defendant should be considered a flight risk under § 3142(f)(2), and so detained

pretrial, because if he was released, ICE would remove him prior to trial. *Id.* at 1336. The district court agreed with the government and ordered the defendant detained. We reversed, "hold[ing] that in the context of § 3142(f)(2), the risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant." *Id.* at 1339. We remanded to the district court with instructions to set appropriate conditions for release pending trial, and we further directed that "[w]hen the conditions of release have been met, the United States Marshals shall release [the defendant] to ICE custody, pursuant to the detainer." *Id.* at 1340.

*Ailon-Ailon* is consistent with the five circuits that have held that there is no conflict between the two statutes and that release under the BRA does not preclude detention or removal under the INA. *See United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020) (rejecting defendant's argument that a BRA release order precludes INA removal, explaining that "[t]he BRA and INA can coexist" because "the BRA does not have any clearly expressed intention to subordinate the INA"); *Lett*, 944 F.3d at 471 (explaining that "there is no conflict between the detention-and-release provisions of the two statutes" and holding that "[t]he district court's bail release order under the BRA thus did not preclude the government from detaining Lett pursuant to the INA as an inadmissible alien subject to removal"); *Soriano Nunez*, 928 F.3d at 247 (finding "no textual conflict between the BRA and the INA" and concluding that the district court "correctly declined to hold that Soriano Nunez's BRA release order mandated her release from ICE detention"); *Vasquez-Benitez*, 919 F.3d at 553-54 (explaining that "Congress has never indicated that the BRA is

11

intended to displace the INA" and affirming the district court's release order under the BRA, but vacating the district court's "order prohibiting the U.S. Marshal from delivering Vasquez-Benitez to the custody of [ICE]"); *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) (finding no conflict between the BRA and the INA and reversing order enjoining ICE from detaining defendant under the INA, because "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination"). Mr. Barrera has not presented any persuasive authority that would compel us to disagree with these decisions from our sister circuits.

Mr. Barrera first argues that the Ninth Circuit has construed the BRA and the INA in a way that supports his request for an injunction, citing to *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015). But that case did not address the issue presented here. In *Santos-Flores*, the Ninth Circuit held that the district court erred in relying on an ICE detainer and the probability of Santos-Flores's removal to detain him under the BRA as a flight risk. *Id.* at 1092. The holding in *Santos-Flores* is similar to our holding in *Ailon-Ailon*. In fact, we cited to *Santos-Flores* to support our decision in *Ailon-Ailon*. *See* 875 F.3d at 1337 ("In a slightly different context, the Ninth Circuit has suggested that 'flee' as used in § 3142 involves an element of volition."). In *Santos-Flores*, the court stated that once the government elects to criminally prosecute an alien, it "may not use its discretionary power of removal to trump a defendant's rights to an individualized determination under the [BRA]." 794 F.3d at 1091. In other words, the Ninth Circuit concluded that the district court

12

"may not . . . substitute a categorical denial of bail for the individualized evaluation required by the [BRA]." *Id*. at 1091-92. It then upheld the district court's alternative ruling that Santos-Flores would be a voluntary flight risk based on the court's individualized consideration of the evidence in his case and the factors for determining whether release is appropriate under § 3142(g). *See id*. at 1092.

Mr. Barrera reads *Santos-Flores* as standing for the proposition that "the government may not use its discretionary power of removal to trump a defendant's right to pretrial release under the Bail Reform Act as long as the criminal case is pending." Aplt. Mem. Br. at 13 (internal quotation marks and brackets omitted). But *Santos-Flores* did not speak to whether a defendant can be removed if he is released pretrial under the BRA. The focus in *Santos-Flores* was on conducting an individualized determination on the detention question as opposed to automatically detaining an individual if there was a pending ICE detainer. Moreover, the defendant in *Santos-Flores* was not actually released, so the Ninth Circuit never addressed the question before this court—whether a district court has the authority to enjoin ICE from removing a defendant once he is released under the BRA. The *Santos-Flores* decision does not provide a basis to reverse the district court's decision.

Mr. Barrera next acknowledges the decisions from the five other circuits that the district court relied on in reaching its decision, but he contends that "their reasoning is unavailing." Aplt. Mem. Br. at 14. He primarily challenges the Sixth Circuit's decision in *Veloz-Alonso*. In that case, the district court released the defendant on bail prior to sentencing and issued an order preventing ICE from

13

detaining and deporting him prior to sentencing due to a statutory conflict. 910 F.3d at 267. The Sixth Circuit reversed, concluding that there was no statutory conflict between the BRA and INA. Mr. Barrera points to what he views as two key assumptions from that decision: (1) that "ICE is under mandatory instruction to detain and deport an alien illegally reentering after a final removal order," *id*. at 269 (discussing § 1231(a)); and (2) that "[t]he BRA presumes detention but allows for the permissive release of a criminal defendant," *id*. at 270. Aplt. Mem. Br. at 15.

Mr. Barrera contends that the Sixth Circuit's "analysis is unsustainable in this circuit because both assumptions are wrong." *Id*. He asserts that in our decision in *Ailon-Ailon*, we rejected the second premise in *Veloz-Alonso* because "in this circuit, liberty is the rule and pretrial detention is the exception." *Id.* (citing *Ailon-Ailon*, 875 F.3d at 1336). In *Ailon-Ailon*, which involved pretrial detention, we did note that "'[i]n our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception,'" 875 F.3d at 1336 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). But the defendant in *Veloz-Alonso* had pleaded guilty, so the question of release was governed by § 3143(a). That provision of the BRA requires that a defendant "found or pleading guilty *must* be detained unless the district court finds by clear and convincing evidence that he is not a flight risk or a danger to the safety of the community." *Veloz-Alonso*, 910 F.3d at 267 (emphasis added). Given the circumstances in *Veloz-Alonso*, that court was correct in stating that the BRA presumes detention, but allows for permissive release. *Ailon-Ailon*

14

never rejected that premise, because it involved pretrial detention, not detention after conviction. Accordingly, there is no conflict between *Ailon-Ailon* and *Veloz-Alonso*.

With respect to *Veloz-Alonso*'s assumption that ICE is required to detain and deport an alien who has illegally reentered the country and is subject to a reinstated order of removal, Mr. Barrera argues that *Santos-Flores* "rejected the idea that immigration authorities in reinstatement proceedings lack discretion." Aplt. Mem. Br. at 15. But, as noted above, *Santos-Flores* did not address the issue here and nothing in that case compels us to reverse the district court in the face of overwhelming circuit authority to the contrary.

Mr. Barrera also argues that ICE routinely violates the statutory 90-day time limit within which it must remove a person who is subject to the reinstatement of a prior removal order. *Id*. at 15-16. He contends that ICE officials do have discretion as to the timing of removal of a previously removed alien as evidenced by ICE referring this case to the U.S. Attorney's Office for prosecution; "[p]resenting a case for criminal prosecution with no guarantee that it would be completed within 90 days contravenes ICE's mandate under § 1231." *Id*. at 16. Mr. Barrera appears to argue that because ICE has discretion as to the timing of removal, if ICE presents a criminal alien for federal prosecution, the court can order ICE to defer removal while the defendant is on pretrial release under the BRA. Citing § 3142 and *Santos-Flores,* 794 F.3d at 1091, he argues that "[i]f the government chooses to prosecute, it must submit to the detention rules that govern criminal prosecutions." Aplt. Reply. Br. at 8. But Mr. Barrera does not cite to any specific language in § 3142 that supports

15

this proposition, and *Santos-Flores* did not reach this question. We do not find this argument persuasive; instead, we agree with the other circuits that have held the government does not need to make a choice between a criminal prosecution or removal. *See*, *e.g.*, *Lett*, 944 F.3d at 471 ("The BRA and INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes.").

In addition, Mr. Barrera has failed to provide authority to support the proposition that if ICE fails to remove Mr. Barrera within § 1231(a)'s 90-day timeframe, then it forfeits its ability to detain or remove him during his criminal proceedings and must defer to the conditions of his release under the BRA. Likewise, he offers no authority to support his position that ICE's conduct in this case or others renders mandatory detention or removal under the INA discretionary. The relevant statutory provisions mandate Mr. Barrera's detention and removal. Because the agency found Mr. Barrera deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) in its final order of removal, which has now been reinstated, he qualifies as a criminal alien subject to mandatory detention under § 1226(c)(1)(B) and removal within 90 days under § 1231(a).[6]

---

[6] Section 1226(c)(1)(B) states: "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section [1227(a)(2)(A)(iii)] . . . of this title." Section 1231(a)(1)(A) states: "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ."

16

Mr. Barrera next argues that § 3142(d) supports his request to enjoin ICE from detaining or deporting him. But nothing in § 3142(d) authorizes a court to enjoin ICE. Section 3142(d)(1)(B) authorizes the temporary detention of a defendant for ten days if a judicial officer finds the person "is not a citizen of the United States or lawfully admitted for permanent residence . . . and such person may flee or pose a danger to any other person or the community." The statute

> direct[s] the attorney for the Government to notify the . . . appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings*.

*Id*. § 3142(d) (emphasis added). Mr. Barrera argues that the language emphasized above "suggests that if the other jurisdiction with a claim to the person does not come get him, the federal release order controls. The person must be allowed to remain in the community pursuant to the federal court order." Aplt. Mem. Br. at 19.

Mr. Barrera's reliance on the "notwithstanding" clause is misplaced. The clause instructs the court to "apply the BRA as it would to any other criminal defendant, notwithstanding the existence of parallel proceedings." *Lett*, 944 F.3d at 472. The clause supports the conclusion that the INA remains applicable to defendants released under the BRA after the close of the ten-day period. *See id*.; *see also Pacheco-Poo*, 952 F.3d at 953 (the "notwithstanding" clause "does not affect whether ICE can seek removal"). And we agree with the other circuits that have addressed this same argument. First, "[t]he ten-day period is a limitation on the

17

*district court*'s authority to release a defendant pursuant to the BRA. It has no bearing on the *government*'s authority to detain a defendant pursuant to the INA at a later date." *Lett*, 944 F.3d at 472; *see also Soriano Nunez*, 928 F.3d at 245 n.5 ("An agency's inaction [during the ten-day period] does not bar it from later taking custody of the individual pursuant to its lawful authority."). Additionally, § 3142 is "a notice provision designed to give other agencies an opportunity to take custody of a defendant before a BRA release order is issued." *Soriano Nunez*, 928 F.3d at 246. Nothing in § 3142(d)'s text "prevents ICE from enforcing a detainer or taking a defendant into custody for removal proceedings after an order of release under the BRA." *Id.* (internal quotation marks omitted).

Finally, we address Mr. Barrera's argument that certain immigration regulations favor delaying deportation over disrupting criminal prosecutions. *See* Aplt. Mem. Br. at 22 (citing 8 C.F.R. §§ 215.2(a), 215.3(g)). But Mr. Barrera conflates deportation or removal with departure. The regulations he cites do not relate to removal, they apply to voluntary departures, *see Ailon-Ailon*, 875 F.3d at 1339 (characterizing §§ 215.2(a) and 215.3(g) as "regulations regarding voluntary departure"). "Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008).

The first regulation authorizes the government to prevent an alien from voluntarily departing "if his departure would be prejudicial to the interests of the

18

United States under the provisions of § 215.3." 8 C.F.R. § 215.2(a). And an alien could cause prejudice to the United States by voluntarily departing when he "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court of the United States." *Id*. § 215.3(g). In that circumstance, the departure-control officer "shall serve [the alien] with a written temporary order directing him not to depart" until notified the order has been revoked. *Id*. § 215.2(a).

In *Lett*, the defendant argued that these regulations supported a bar on ICE deporting alien criminal defendants "during the pendency of their criminal cases—and therefore from detaining such defendants under the INA." 944 F.3d at 472. But the Second Circuit rejected that argument, explaining that "these regulations merely prohibit aliens who are parties to a criminal case from departing from the United States *voluntarily*; they do not affect the government's authority *to deport* such aliens pursuant to final orders of removal." *Id*. at 472-73. Mr. Barrera was not granted voluntary departure. Because these regulations do not apply to alien criminal defendants like Mr. Barrera, who is subject to a final order of removal, we reject his argument that "[t]hese regulations undermine the government's claim that it must remove certain aliens while criminal charges are pending." Aplt. Mem. Br. at 22.

## IV.

"Like our sister courts of appeals, we too must follow the principle that 'courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly

19

expressed congressional intention to the contrary, to regard each as effective.'"

*Soriano-Nunez*, 928 F.3d at 247 (quoting *Vasquez-Benitez*, 919 F.3d at 553). The BRA and the INA are capable of co-existing in the circumstances presented here. As the district court aptly stated, "[s]imply put, the [BRA] does not preclude INA removal." Aplt. Unsealed App. at 159. Accordingly, we affirm that portion of the district court's release order denying Mr. Barrera's request to enjoin ICE from detaining or deporting him if he is released under the BRA.