# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2021

Lyle W. Cayce
Clerk

No. 20-60067

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

MELECIA BALTAZAR-SEBASTIAN,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CR-173-1

Before BARKSDALE, SOUTHWICK, and GRAVES, *Circuit Judges*.

RHESA HAWKINS BARKSDALE, *Circuit Judge*:

Primarily at issue is whether the United States Department of Homeland Security's Immigration and Customs Enforcement Agency (ICE) may, under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, civilly detain a criminal defendant after she has been granted pretrial release pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* We hold there is no conflict between the statutes preventing defendant's detainment. VACATED.

I.

Melecia Baltazar-Sebastian is a Guatemalan citizen residing in the Southern District of Mississippi. In August 2019, she was arrested at her place of employment during an ICE worksite enforcement action. After Baltazar admitted she was not in possession of proper immigration documents, ICE took her into custody. She was civilly charged with being inadmissible under the INA and was booked into an ICE processing center in Jena, Louisiana (there are no ICE facilities in Mississippi dedicated to more than 72-hours' detention). *See* 8 U.S.C. § 1226(a).

Later that month, a grand jury in Mississippi indicted Baltazar for misusing a social-security number, in violation of 42 U.S.C. § 408(a)(7)(B). A warrant was issued for her arrest; and, in response, ICE transferred her to the United States Marshal for the Southern District of Mississippi for her initial appearance on her indictment. Before she was transferred, however, ICE lodged a detainer, which advised the Marshal that it sought custody of Baltazar in the event of her release (ICE detention). *See* 8 C.F.R. § 287.7(a).

In September, after Baltazar pleaded not guilty to her criminal charges, the magistrate judge held a hearing in Jackson, Mississippi, to determine Baltazar's eligibility for pretrial release under the Bail Reform Act (BRA). Concluding she was not a flight risk or danger to the community, the magistrate judge ordered her released on bond subject to conditions (September release order). *See* 18 U.S.C. § 3142(b). The conditions required, *inter alia*, that she "remain in the Southern District of Mississippi at all times during the pendency of these proceedings unless special permission is obtained from the Court". The Government did not then challenge the September release order. *See* 18 U.S.C. § 3145(a).

Notwithstanding the September release order, ICE retook custody of Baltazar based on its prior detainer and returned her to its detention facility

in Jena, Louisiana (almost 200 miles away). In late September, while she remained in ICE detention, a magistrate judge granted the United States' motion for writ of *habeas corpus ad prosequendum* to facilitate Baltazar's appearance at a pretrial hearing in Jackson, Mississippi, for her criminal case. Baltazar then requested a hearing in that case to clarify her status under the September release order, maintaining her civil ICE detention was unlawful because of the September release order.

After an October hearing in Mississippi, the district court granted Baltazar's request to enforce the September release order, precluding ICE detention (October enforcement order). In that regard, the court stated: "Once the criminal matter is concluded the Executive Branch may continue its immigration proceedings". In December, the court denied the Government's motion for reconsideration of the October enforcement order (December order). The court reasoned ICE's detainment would "circumvent" the September release order. The Government appealed the December order. On the Government's motion, the district court stayed Baltazar's criminal trial pending this appeal.

## II.

First at issue is our jurisdiction *vel non* to consider the Government's appeal. If jurisdiction exists, we review the Government's contesting the court's precluding ICE from detaining Baltazar during the pendency of her criminal proceedings; and, along that line, Baltazar's separation-of-powers and right-to-fair-trial contentions.

## A.

As discussed above, in October, subsequent to ICE's resuming detention of Baltazar, the district court ordered her release from that detention pursuant to the September release order, promising a "more thorough written [o]rder" would follow. The Government timely moved to

reconsider that October enforcement order, extending the Government's time in which to appeal until after the motion was denied. *See United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir. 1995) (holding motion for reconsideration tolls time to appeal under Federal Rule of Appellate Procedure 4); *United States v. Rainey*, 757 F.3d 234, 239 (5th Cir. 2014) ("[Under 18 U.S.C. § 3731,] the Government continues to be bound by the thirty-day requirement, but the judgment becomes final, and the clock begins to run, only after the disposition of a timely filed motion to reconsider".). After the court, in its December order, denied the motion to reconsider, the Government timely appealed.

In maintaining we have jurisdiction over its appeal of the court's December order, the Government relies on the BRA:

> An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

18 U.S.C. § 3731 (paragraph three).

1.

Interestingly, our jurisdiction is challenged not by Baltazar, but by an *amicus curiae*. The *amicus* maintains, *inter alia*: for purposes of appellate jurisdiction, the Government should have challenged the magistrate judge's September release order, as opposed to appealing the district court's *enforcement* of that order (the December order). Although appellate jurisdiction *vel non* is not mentioned in the parties' opening briefs (the Government's reply brief responds to the jurisdictional issue presented by the *amicus*), we must, of course, consider the question *sua sponte*. *See Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d

1285, 1292 (5th Cir. 1991) ("[A]micus curiae . . . cannot raise an issue raised by neither of the parties absent exceptional circumstances".); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) ("Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

2.

Under the BRA, we have jurisdiction over "[a]n appeal from a release or detention order, or from a decision denying revocation or amendment of such an order". 18 U.S.C. § 3145(c). In that regard, and as referenced *supra*, jurisdiction exists for the Government's appeal from "a decision or order, entered by a district court of the United States, granting the release of a person charged with . . . an offense". 18 U.S.C. § 3731 (paragraph three). Importantly, the provisions of this statute should be "liberally construed to effectuate its purposes", which undoubtedly include the expansion of appellate jurisdiction. *Id.* (paragraph five); *see United States v. Wilson*, 420 U.S. 332, 337 (1975) (concluding the passage of the Criminal Appeals Act of 1970 showed "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit"); *United States v. Jefferson*, 623 F.3d 227, 230 (5th Cir. 2010) ("We have interpreted § 3731 as providing the government with as broad a right to appeal as the Constitution will permit.") (internal quotation marks and citation omitted).

The September release order released Baltazar from criminal detention under the BRA. Considered by itself, we would lack jurisdiction over the September release order because it was issued by a magistrate judge and not a district court. 18 U.S.C. § 3145(a); *see, e.g., United States v. Harrison*, 396 F.3d 1280, 1281 (2d Cir. 2005). The December order,

however, was the district court's affirmation of the September release order in response to defendant's motion to clarify her release status. The December order is therefore appealable under §§ 3145 and 3731. *See United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2019) ("[Defendant] essentially challenges the [District] Court's decision to deny her request to enforce its BRA order. . . . To the extent [defendant] challenges the enforcement of a BRA order, we have jurisdiction over this appeal."); *United States v. Lett*, 944 F.3d 467, 469 (2d Cir. 2019) (reviewing district court's enforcement of prior release order).

## B.

Accordingly, we consider the Government's challenge to the district court's interpretation of the interplay of the BRA and INA. Its rulings on questions of law are, of course, reviewed *de novo*. *See United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019) (analyzing *de novo* all legal conclusions related to release orders under the BRA and ICE detentions under the INA).

### 1.

The Government contends, in passing, that the district court violated the INA in its enforcement of the September release order. As stated in 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General . . . regarding the detention or release of any alien". *See also* 8 U.S.C. § 1252(g) (in relation to removal proceedings, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings").

In its October and December orders for Baltazar's release, the district court expressly prohibited ICE from retaking custody. According to the

Government, the court thereby set aside a decision regarding an alien's detention.

The court correctly rejected the applicability of §§ 1226(e) and 1252(g) in its December order, explaining it was "not attempting to review or set aside any decision or action to commence removal proceedings" but was instead "attempting to enforce the Magistrate Judge's [September release] Order".

2.

More substantively, the Government maintains the court erred in concluding there is an order of precedence between the BRA and INA, by deciding that, once the Government began criminal proceedings against Baltazar, the BRA superseded the INA. The court relied on two textual grounds.

First, the court concluded: the BRA mandates defendant's release whereas the INA grants only discretionary authority to detain. *See* 18 U.S.C. § 3142(b) ("The judicial officer *shall* order the pretrial release of the person" unless the person is a flight risk or danger to the community) (emphasis added); 8 U.S.C. § 1226(a) ("[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States".) (emphasis added). Second, the court read the BRA to prescribe the exclusive means for pretrial detention of alien-defendants. *See* 18 U.S.C. § 3142(d) (stating: if an alien is a flight risk or danger to the community, then the judicial officer "shall order the detention of such person, for a period of not more than ten days, . . . and direct the attorney for the Government to notify . . . the appropriate official of the Immigration and Naturalization Service"). Given § 3142(d) expressly references pretrial detention for alien-defendants, the court concluded it follows that the usual provisions of the BRA apply to an alien-defendant if he or she is not a flight risk or danger to

the community. Therefore, because Baltazar was not deemed a flight risk or danger to the community, the court concluded the ordinary mandate of release applied.

Whether the BRA and INA conflict is of first impression in our circuit. We therefore consider the decisions by the six other circuits which have addressed the issue. *See United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950 (8th Cir. 2020); *United States v. Lett*, 944 F.3d 467 (2d Cir. 2019); *United States v. Soriano Nunez*, 928 F.3d 240 (3d Cir. 2019); *United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019); *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018). All of these circuits hold the statutes do not conflict: pretrial release under the BRA does not preclude pre-removal detention under the INA. Of course, our court is at liberty to create a circuit split, *see Matter of Benjamin*, 932 F.3d 293, 298 (5th Cir. 2019) (recognizing its holding conflicts with the "majority of our sister circuits"); but, for the reasons that follow, we do not do so in this instance. Instead, we agree with the well-reasoned holdings of our fellow circuits.

Fundamentally, the BRA and INA concern separate grants of Executive authority and govern independent criminal and civil proceedings. *See, e.g.*, *Soriano Nunez*, 928 F.3d at 245 ("[W]hile the BRA aims to ensure a defendant's presence at trial, the INA uses detention to ensure an alien's presence at removal proceedings".); *Barrera-Landa*, 964 F.3d at 918 ("[T]he BRA does not give the district court authority to interrupt ICE's independent statutory obligations to take custody of [an alien-defendant] once he is released."); *Vasquez-Benitez*, 919 F.3d at 553 ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial."). Nothing in the text of the BRA or INA evinces any order of precedence between the statutes.

In addition, their silence, opposite the district court's interpretation, shows the statutes' working together, not in conflict. *See Pacheco-Poo*, 952 F.3d at 953 ("Other provisions of the BRA do not preclude removal under the INA."); *Vasquez-Benitez*, 919 F.3d at 553 ("Congress has never indicated that the BRA is intended to displace the INA."). Accordingly, the use of "shall" in the BRA and "may" in the INA must be interpreted in the light of their separate and independent statutory grants of authority.

Furthermore, the court's reading of § 3142(d) as the exclusive means for pretrial detention of alien-defendants inappropriately imports an exclusivity clause into the text. *See Pacheco-Poo*, 952 F.3d at 953 (holding § 3142(d) "does not mandate that immigration officials detain then and only then"). Section 3142(d) is a limitation on the district court's authority to release an alien-defendant pursuant to the BRA, not on ICE's authority pursuant to the INA. *See Soriano Nunez*, 928 F.3d at 246 ("By providing these other agencies an opportunity to take custody of such persons, [§ 3142(d)] effectively gives respect to pending cases and allows those officials to act before bail is set in the federal case. . . . The BRA's temporary detention scheme thus reflects Congress' recognition that immigration authorities . . . have separate interests."). Moreover, § 3142(d) only applies to defendant-aliens who might flee or pose a danger, a scenario found inapplicable to Baltazar by the magistrate judge in the September release order. Allowing detentions under the INA outside of § 3142(d) in no way disregards this process; it leaves it entirely intact and concerns a different class of defendants.

3.

Lastly, the Government contests the district court's conclusion that ICE violated INA regulations by detaining Baltazar. Under 8 C.F.R. § 215.2(a), an alien shall not depart the United States "if [her] departure

would be prejudicial to the interests of the United States". As a party to a pending criminal case, an alien's departure is deemed prejudicial. 8 C.F.R. § 215.3(g). The departure is not prejudicial, however, if the "appropriate prosecuting authority" provides consent. *Id.* The court reasoned that, because consent was not provided for Baltazar's departure, removing her from the country would be prejudicial to the United States. And, according to the court, "if ICE cannot remove her, it cannot detain her for removal purposes".

Sections 215.2 and 215.3, however, do not relate to removal. Instead, they "merely prohibit aliens who are parties to a criminal case from departing from the United States *voluntarily*". *Lett*, 944 F.3d at 472 (emphasis in original). In other words, the regulations pertain to actions by an alien, not the Government. Reading "departure" in this manner follows from the text of § 215.2(a):

> Any departure-control officer who knows or has reason to believe that the case of an alien in the United States comes within the provisions of § 215.3 shall temporarily prevent the departure of such alien from the United States and shall serve him with a written temporary order *directing him not to depart, or attempt to depart*, from the United States until notified of the revocation of the order.

8 C.F.R. § 215.2(a) (emphasis added). This interpretation is further confirmed by other provisions in the INA. *See, e.g.*, 8 C.F.R. § 215.4(a) (allowing alien to contest prevention of his departure). Again, every circuit to consider the issue agrees the regulations concern an alien's own actions, not those of ICE. *See Barrera-Landa*, 964 F.3d at 923; *Lett*, 944 F.3d at 472–73; *Pacheco-Poo*, 952 F.3d at 953; *cf. Lopez-Angel v. Barr*, 952 F.3d 1045, 1050 (9th Cir. 2019) (Lee, J., concurring) ("The ordinary meaning of the word 'departure' refers to a volitional act. It would be quite strange to say, for

example, 'the suspect departed the crime scene when police took him into custody.'").

## C.

In addition to her statutory interpretation (which mirrors the district court's above-discussed position), Baltazar contends: the Executive Branch violated the separation of powers through ICE's detention of her; and the court's enforcement of the September release order protected her constitutional right to a fair trial under the Fifth and Sixth Amendments. As discussed *infra*, because neither issue has merit, we need not decide whether either was preserved in district court.

### 1.

Regarding separation of powers, Baltazar maintains: ICE, *inter alia*, "arrogated to itself the authority to disregard the legal effect of an Article III court's judgment"; therefore, even if there were statutory authority for ICE's actions under the INA, such authority would not nullify a court's valid release order. The Government counters, *inter alia*: the separation-of-powers issue was not properly preserved for appeal because Baltazar did not pursue this issue in district court.

Again, because her contention lacks merit, we need not decide whether Baltazar's separation-of-powers issue falls within an exception to unpreserved issues' being either waived or subject only to plain-error review. In short, we consider, and reject, the assertion that ICE's pre-removal detention of Baltazar violates the separation of powers. *See Vasquez-Benitez*, 919 F.3d at 552 ("ICE's detention does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial."); *Veloz-Alonso*, 910 F.3d at 268.

2.

Concerning the Fifth and Sixth Amendments, the court in its December order observed that ICE's detention facilities in Louisiana are more than 200 miles away from Baltazar's criminal proceedings in Jackson, Mississippi—requiring court-appointed defense attorneys to travel a full day to see their clients. Similar to her separation-of-powers issue, the Government maintains Baltazar waived her Fifth and Sixth Amendment fair-trial issue by failing to raise it in district court.

Once again, we need not decide whether the issue is waived or subject only to plain-error review; the issue is meritless. In referencing the distance between Jackson, Mississippi, and ICE's detention facilities in Louisiana, the court did not explain the import of its observation, or even to what degree, if any, it was making a factual finding. Moreover, while the commute is undoubtedly burdensome, the court did not conclude that ICE's detention of Baltazar violated her constitutional right to a fair trial, which would include assistance of counsel. There are, therefore, no reviewable findings or conclusions on any purported violations of the Fifth and Sixth Amendments.

III.

For the foregoing reasons, the district court's December 2019 order precluding ICE from detaining Baltazar pending completion of her criminal proceedings is VACATED.